## Anthony W. Bastian et al. v. The Modern Woodmen of America et al.

1. REPEALS—*By Implication Not Favored.*—Repeals by implication are not favored in this State, and a statute should not be held to be so repealed if it can be reasonably avoided. Unless it is manifest that a repeal was intended by the legislature, the former act should be considered in force.

Bastian v. Modern Woodmen of America.

2. FRATERNAL BENEFIT SOCIETIES—*May Transact Business Outside of State.*—The act of June 19, 1893, authorizing certain companies to do business outside of this State was not repealed, so far as fraternal benefit societies are concerned, by the act of June 22, 1893, in relation to fraternal benefit societies, or the act of the same date in relation to assessment insurance companies.

Bill, for injunction. Appeal from the Circuit Court of Whiteside County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the December term, 1896. Affirmed. Mr. Justice CRABTREE, dissenting. Opinion filed February 12, 1897.

JOHN M. HAMILTON and F. D. RAMSAY, attorneys for appellants.

J. G. JOHNSON and JACKSON & HURST, attorneys for appellees.

MR. JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This was a suit in chancery commenced by appellants, members of the order of Modern Woodmen of America, to enjoin the chief officers of the order from removing its principal office from Fulton, Illinois, to Rock Island, Illinois.

The Modern Woodmen of America is a secret, fraternal and benevolent life insurance society, with lodge organizations called camps, and has a membership of many thousands, extending over several States. It was incorporated in 1884, under the laws of Illinois, governing the formation of corporations and for pecuniary profit. The principal office and place of business was located and fixed in its certificate of incorporation at Fulton, Illinois. Its supreme legislative and governing body is called the head camp, which meets in regular biennial session at such time and place as the preceding head camp may have determined. One of the fundamental laws of the order reads : " The laws may be amended at any special or regular session of the head camp by a two-thirds vote of the authorized delegates present."

At a meeting of the head camp, held November, 1893, at Omaha, Neb., at which 103 delegates were present, the proposition of locating the principal offices of the order was voted upon. Several cities in Illinois contended for the location, and the vote was as follows: Rock Island, 56; Peoria, 27; Fulton, 15; Springfield, 4; Bloomington, 1. Rock Island was declared to be the choice of the head camp and the board of directors and head officials were directed to take the necessary steps to accomplish the removal of the head office from Fulton to Rock Island.

Upon the ground chiefly that the vote in favor of removal to Rock Island was not by two-thirds of the delegates present, appellants, who are resident members of Fulton, presented this bill to restrain the chief officers from making the removal. The contention in the bill was that the resolution adopted by the head camp directing the removal was void, because it was not passed as an amendment to the fundamental laws by a vote of two-thirds of the delegates present, and because the head camp could not lawfully adopt such resolution while sitting outside of the State of Illinois. A temporary injunction restraining the removal of the office was granted, which is in force pending this appeal.

Appellee filed an answer denying that the resolution for removal was void, and averred that all steps taken by the head camp at Omaha to that end were legal and regular.

At the October term, 1895, appellees filed a supplemental answer in which it was shown that at a session of the head camp held at Madison, Wis., in June, 1895, it was ordered by a two-thirds vote of the delegates present that the by-laws be amended by the adoption of a new section, to wit:

"The articles of association of this corporation may be changed at any regular session of the head camp by a ressolution designing and setting forth the change sought to be made, said resolution to be adopted by at least two-thirds of the members present at said head camp, and entitled to vote thereat."

It was shown also that the following resolutions were adopted by a unanimous vote:

" That the board of directors of this order have power and are hereby required to amend the articles of association and the fundamental laws of this order in such particulars as the same may be directed to be done by a vote of two thirds of the members of any head camp, by a certificate signed by the head counsel or head clerk, attested by the seal of the corporation, and that this resolution or rule take effect from and after its passage."

And the following was adopted by a vote of 232 to 9:

" Resolved, by the members of this head camp, that the location of the principal office of this order be changed from Fulton, Illinois, and be established at Rock Island, Illinois, and that the board of directors be required to amend the articles of association and the fundamental laws of the order, making Rock Island the place of permanent location of the principal office, and that said board be required to take steps, as soon as practicable after such amendment is made, to effect such change."

That after adjournment of the head camp a full meeting of the board of directors of the order was held at Fulton, August 21, 1895, and the following resolution was unanimously adopted:

" Whereas, the head camp of this order, at the late session held at Madison, Wisconsin, June 4 to June 8, 1895, by a vote of its members, changed the location of the principal office from Fulton, Illinois, to Rock Island, Illinois, and by resolution instructed this board to take the proper steps to make the change effective,

Therefore be it resolved, that in accordance with said instructions of the head camp to this board, and in compliance with the laws of Illinois, the head clerk of this corporation is hereby directed to prepare a certificate of said action of the head camp in so changing the location of its principal office, and cause said certificate to be signed by the board of directors of this corporation, and the chairman of this board is hereby directed to present said certificate to the auditor of public accounts of the State of Illinois for his approval of such change, and after having

the approval of said auditor indorsed thereon, to file the said certificate so approved in the office of the secretary of state of Illinois, and also file a copy of said approved certificate by said secretary of state in the office of recorder of deeds in and for Whiteside county, Illinois."

The supplemental answer further stated that a certificate was prepared by the head clerk in conformity with the resolution of its directors; that it was approved by the secretary of state and commissioner of insurance of Illinois and filed and recorded as directed.

After hearing, the court found the issues for defendants and dismissed the bill for want of equity, at the costs of appellants.

The evidence in the record sustains the allegations in the supplemental answer. As we regard the defense interposed by it as complete, we deem it unnecessary to consider the validity of the proceedings at Omaha.

Prior to the general assembly of 1893 there was no legislative authority for the Modern Woodmen of America to provide for the removal of its chief office at a session held outside of the State. At that time, however, there was enacted as an amendment to the law under which the order was incorporated the following section, which, by virtue of being passed with an emergency clause, went into effect June 19, 1893:

Sec. 18a. "Any corporation, association or society that has heretofore or may hereafter organize under the act designated in Sec. 1 of this act, or that has been organized under an act of which said act designated in said Sec. 1 is an amendment, may transact any business outside of the State of Illinois that it can or may do in the State of Illinois, and any business heretofore transacted outside of this State by any such organization, which would be legal if done within this State, is hereby legalized and made valid."

That amendment removed the extra-territorial infirmity. Acting under it, the head camp at Madison passed the resolutions above quoted, and the board of directors subsequently made the order to carry the resolution into effect.

Appellants contend, however, that the amendment, "Section 18a," was repealed within a few days after its passage by an act which went into effect, by virtue of an emergency clause, June 22, 1893, and that when the head camp met at Madison it was governed by the last mentioned act.

The act of June 22d, was a general act to provide for the organization and management of fraternal beneficiary societies. It did not specially repeal the amendatory act of June 19th, but had in it a general repealing clause repealing all acts inconsistent with it. At the same session the general assembly passed an act to provide for the organization and operation of corporations for the purpose of furnishing life and accident insurance upon the assessment plan, which went into effect July 1, 1893, and which contained a general repealing section.

If it be considered that section 18a was repealed by the emergency act of June 22d, or the joint operation of that act and the one which went into effect July 1st, such conclusion must be reached upon the ground solely that the repeal was by implication. Repeals by implication are not favored in this State, and a statute should not be held to be so repealed if it can be reasonably avoided. Hyde Park v. Oakwood Cem. Ass'n, 119 Ill. 149; Butz v. Kerr, 123 Ill. 659. Unless it is manifest that a repeal was intended by the legislature the former act should be considered in force. In regard to the acts under consideration, we have reached the conclusion that instead of an intent to repeal being manifest the contrary was intended, so far at least, as appertains to fraternal societies. While in section 28 of the act which went into effect July 1, 1893, there was a general repealing clause applying to all acts in conflict with that law and a specific repeal of the act of June 16, 1887, there was also contained in it this proviso:

" Provided, that the repeal of said act and nothing herein contained shall affect secret or fraternal corporations, associations or societies organized under said act or the act of which it is an amendment, but the same shall be and remain in full force as to them."

Without elaborating further we are constrained to hold that neither of the acts, separately or jointly, repealed section 18a so far as fraternal societies were concerned, and that the head camp had the power at its session at Madison to provide for the removal of its chief offices in this State. We are of the opinion, also, that the steps there taken and those subsequently taken by the board of directors were authorized and regular.

With this view it is needless to consider in this opinion the other points of contention presented in the briefs of counsel.

The decree of the Circuit Court finding for appellees and dismissing the bill will be affirmed.

CRABTREE, J., dissents.