## J. Hacken, v. Harris Isenberg et al.
## Harris Isenberg et al., Appellees, v. Christina Roll-berg, Appellant.

### Gen. No. 23,345.

1. MECHANICS' LIENS—*who may file bill or petition for general settlement.* The owner of a leasehold interest in property may file a bill or petition for general settlement against the original contractor and subcontractors claiming mechanics' liens, as provided in section 30 of the Mechanics' Liens Act (J. & A. ¶ 7168), providing that "the owner or any person having such a lien * * * may file his or her bill or petition * * *."

2. MECHANICS' LIENS, § 33*—*when attach against interest of landlord.* Where a lease for a term of 10 years provided that the lessee should make all repairs at his own expense, that he would not permit any alteration except by written consent of the lessor, and that all alterations and additions should remain for the benefit of the lessor, the authority given to repair was a proper basis for the attachment of mechanics' liens in favor of the contractors to the interest of the owner-lessor, notwithstanding the agreement, as between the owner and tenant, that the latter was to pay for the repairs.

3. MECHANICS' LIENS, § 33*—*when shown that owners of premises knowingly permitted repairs by tenant.* Evidence *held* to support a finding that the defendants, owners of the premises involved, knowingly permitted the repairs for the tenant in question, in a suit for general settlement of certain mechanics' liens brought under section 30 of the Mechanics' Liens Act (J. & A. ¶ 7168).

4. MECHANICS' LIENS—*when special leave of court unnecessary to make owners parties in suit for general settlement.* Special leave of court was not necessary to make owners of premises involved in a suit for general settlement of mechanics' liens brought by the lessee of the premises against the general contractor and subcontractors, where the latter filed answers in the nature of intervening petitions, naming the owners parties defendant thereto.

5. MECHANICS' LIENS, § 150*—*what constitutes commencement of suit as to owner.* The filing of an intervening petition by a subcontractor in a suit for general settlement of mechanics' liens under section 30 of the Mechanics' Liens Act (J. & A. ¶ 7168), providing for such suits, within 4 months of the time final payment

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

became due, or of an intervening petition by the general contractor within 2 years after the contract was completed, claiming subcontractor's and general contractor's liens, respectively, against the owner of the premises, constituted the commencement of suit as to the owner within the meaning of sections 33 and 7, respectively, of the Mechanics' Liens Act (J. & A. ¶¶ 7171, 7145), prescribing those respective periods for the commencement of such suits by subcontractors and general contractors.·

6. MECHANICS' LIENS, § 59*—*when statute construed as continuation of prior statute.* Sections 33 and 7 of the Mechanics' Liens Act, approved July 1, 1903 (J. & A. ¶¶ 7171, 7145), providing for suits by subcontractors and contractors, respectively, are substantial re-enactments of sections 34 and 7 (J. & A. ¶¶ 7172, 7145), respectively, of the Mechanics' Liens Act of 1895, and continuations of same, under section 2, ch. 131, Rev. St. (J. & A. ¶ 11103), providing that the provisions of any statute, so far as they are the same as any prior statute, shall be construed as a continuation of such prior statute and not as a new enactment.

7. TORRENS ACT—*what is effect of Mechanics' Liens Act on claims registered under Torrens Act.* Sections 33 and 7 of the Mechanics' Liens Act of 1903 (J. & A. ¶¶ 7171, 7145), providing for suits by subcontractors and general contractors, respectively, do not repeal by implication those sections of the Torrens Act affecting claimants for mechanics' liens so far as the claims have to do with land registered under the provisions of that act, notwithstanding the provision of the Mechanics' Liens Act that "all acts and parts of acts inconsistent with this act are hereby repealed."

8. TORRENS ACT—*necessity that mechanics' liens claimants comply with.* In order to successfully prosecute claims for mechanics' liens as to property registered under the Torrens Act, the requirements of that act as to mechanics' liens must be complied with.

9. LIS PENDENS, § 9*—*how mechanic's lien claim made within Torrens Act.* A subcontractor or a general contractor who has commenced suit under the Mechanics' Liens Act within the period fixed by that act to establish his lien may bring his claim within the provisions of the Torrens Act, under which the premises involved are registered, by filing with the Registrar of Titles a notice of *lis pendens* as contemplated by section 84 of that Act (J. & A. ¶ 2360), providing that no suit affecting registered land shall be deemed to be *lis pendens* until a certificate of its pendency shall be filed with the registrar.

10. TORRENS ACT—*what constitutes memorial of mechanic's lien.* A certificate of *lis pendens* filed with the Registrar of Titles under section 84 of the Torrens Act (J. & A. ¶ 2360), providing that no

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

suit affecting registered land shall be deemed to be *lis pendens* until a certificate of its pendency shall be filed with the registrar, as to a suit by a subcontractor under the Mechanics' Liens Act to establish his lien, constitutes such a "memorial thereof" as satisfies the language of section 90 of the Torrens Act (J. & A. ¶ 2366), providing that no lien shall be deemed to affect the title to registered land until after a memorial thereof is entered on the register as provided in the act.

11. TORRENS ACT—*what constitutes perfection of lien of subcontractor on land registered under.* So far as the interest of the owner of land registered under the Torrens Act is concerned, in a suit by a subcontractor under the Mechanics' Liens Act to establish his lien, the subcontractor must be deemed to have perfected his lien if he begins suit within 4 months after the time final payment is due him and later files with the Registrar of Titles such certificate of the pendency of his suit as is required by the Torrens Act, but as to the rights of purchasers or other third parties such certificate must be filed within the period of 4 months.

12. TORRENS ACT—*what constitutes notice of subcontractor's lien within.* A certificate of *lis pendens* filed with the Registrar of Titles under section 84 of the Torrens Act (J. & A. ¶ 2360), providing that no suit affecting registered land shall be' deemed to be *lis pendens* until a certificate of its pendency shall be filed with the registrar, as to a suit by a general contractor under the Mechanics' Liens Act to establish his lien, *held* to· be such notice of lien as to satisfy the requirements of section 89 of the Torrens Act (J. & A. ¶ 2365), providing that where any mechanic's lien claim or notice is authorized to be filed in any court or office, the same when it relates to registered land may be filed in the registrar's office and a memorial of such filing entered, and that proceedings to enforce the lien may be held as provided in the act creating the same, and until so filed and registered no lien shall be created.

13. TORRENS ACT—*when mechanic's lien claim or notice by contractor complies with.* It is not essential that a mechanic's lien claim or notice referred to in section 89 of the Torrens Act (J. & A. ¶ 2365) shall contain all the elements of the claim for lien set forth in section 7 of the Mechanics' Liens Act (J. & A. ¶ 7145), as to the filing of a claim with the clerk of the Circuit Court, but it is sufficient if a general contractor files with the Registrar of Titles a statement or notice to the effect that he claims a mechanic's lien on the premises therein described, especially if it states that a suit to enforce such lien is pending.

Hacken v. Isenberg, 210 Ill. App. 120.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS
G. WINDES, Judge, presiding.   Heard in the Branch Appellate
Court at the March term, 1917.  Affirmed.   Opinion filed March
13, 1918.

CULVER, ANDREWS, KING, & STITT, for appellant.

HYMAN SOBOROFF, for appellees.

MR. JUSTICE THOMSON delivered the opinion of the
court.

This is a proceeding in equity for general settle-
ment brought by the lessee of certain premises against
the original contractor and a number of subcontractors
claiming mechanics' liens.   Henry A. Rollberg and
the appellant, Christina Rollberg, were owners of the
premises in question in joint tenancy.   They were
not made parties to the original suit but the general
contractor and the subcontractors filed answers to the
bill in the nature of intervening petitions, and they
named the Rollbergs as parties defendant, but with-
out leave of court having been obtained to add them
as parties to the suit.   Thereupon Henry A. and
Christina Rollberg filed special pleas alleging that the
court was without jurisdiction as to the property in
question because the property was registered under
the Torrens Act and the provisions of that act as to
mechanics' liens had not been complied with.   They
later filed answers to the intervening petitions in
which they endeavored to preserve all defenses, in-
cluding the jurisdictional question raised in their spe-
cial pleas.   The case proceeded to a hearing and the
trial court found that the original contractors were
entitled to a lien for $2,925, for which a decree was
entered, and the court also decreed a lien in favor
of the subcontractors for various amounts, specifying
that the claim of the original contractor should be
decreased to the extent of the liens allowed to subcon-

tractors. Pending the hearing of the case, Henry A. Rollberg died, and Christina Rollberg, his wife, has appealed from the decree of the trial court.

In urging that the decree be reversed, it is first contended that a lessee has no right to maintain such proceeding as this but that the statute confers that right only upon the owner, or one claiming to have a lien against the property. This action is brought under section 30 of our Mechanics' Liens Statute (J. & A. ¶ 7168), which provides that, under the conditions therein set forth, "the owner or any person having such a lien   *   *   *   may file his or their bill or petition   *   *   *." It has been frequently held that the word "owner," as used in the Mechanics' Liens Act, means the owner of any interest in the land, and, although the decisions which give this construction to that word are those involving other sections of the act than the one now before us, they are applicable to the wording of this section. Therefore, under the provisions of section 30, the owner of a leasehold interest in property may file such a bill or petition as is therein provided for.

It is next contended that the evidence fails to prove that either of the joint owners of the property in question "authorized or knowingly permitted" the lessee to repair or improve the premises, or enter into contracts for such repairs or improvements. In view of all the circumstances, as disclosed by the evidence, we are inclined to believe that the work which was done on these premises was authorized by the lease. There is a written clause in the lease to the effect that the lessee "shall make any and all repairs on the premises at his own expense." In the printed part of the lease there is another clause to the effect that the lessee "will not permit any alteration of or upon any part of said demised premises   *   *   *   except by written consent of the first party (lessor); *all alterations and additions to said premises*

*shall remain for the benefit of the lessor,* unless otherwise specified in said consent as aforesaid.'' The words in italics were underlined with a red ink line in the original lease. The lease was for a term of 10 years. The work done by the contractors in this case involved a remodeling of the premises and was entered into very shortly after the tenant took possession. The emphasis which is placed on the provision in the lease to the effect that all alterations and additions shall remain for the benefit of the lessor, the length of the term and the extent of the alterations, all point to the conclusion that when there was inserted in the lease in writing a clause to the effect that the tenant was to make any and all repairs at his own expense, the parties had in contemplation the remodeling work which is the subject of this suit; and the authority thus given to repair is a proper basis for the attachment of liens in favor of the contractors to the interest of the owner, notwithstanding the agreement, as between the owner and the tenant, that the latter was to pay for the repairs.

But we think, further, that the trial court was correct in finding, from the evidence, that the work in question was "knowingly permitted" by the owners. The evidence showed that Mr. and Mrs. Rollberg, who owned the property in joint tenancy, lived in a small town just out of Chicago. The property was located on Halsted street near Twelfth street in the City of Chicago. The Rollbergs have an adult son whose home is in Chicago. During the negotiations for the lease, the owners told the tenant that there was an adequate sewer on the premises. During the progress of the remodeling, it was discovered that there was neither a sewer nor a catch basin, and a Mr. Brown, who testified in the case and who acted as the superintendent of the remodeling work, gave evidence to the effect that he called this matter to the attention of the tenant and also Mr. Edward Rollberg, the son,

and that the latter inquired about the cost of building a sewer and catch basin and that the witness had figures prepared and informed Edward Rollberg that it would cost $110, whereupon the latter authorized the work to be done and agreed to pay for it. He further testified that he saw Edward Rollberg on the premises during the progress of the work several times; that at one time a change was made by using a 12″ beam instead of an 8″ beam and that this change was made at the direction of Edward Rollberg. The witness further testified: "I superintended the construction of the building, together with Mr. Hacken (the tenant) and Mr. Rollberg (the son of the owners)." Edward Rollberg, the son, being called as a witness, testified that his father was a bedridden invalid and never at the building in question; that he had never discussed the work with his father nor his mother; that in the 5 or 6 months during which the work was in progress he was at the premises five or six times, stopping in as he passed by merely out of curiosity. He denied that he had had anything to do with the changing of the beam above referred to. On cross-examination he admitted he directed the work for the sewerage (which is not involved in this suit). He contended, however, that he did this without talking to his mother about it. He was asked who paid for that work and his reply was that he did not remember. He was asked further whether it was not a fact that his mother had given him the money to pay for that work, and again his memory failed him. He testified that he did not order any work on these premises besides the sewerage. One of the general contractors, called as a witness, testified that Edward Rollberg was the one who suggested the 12″ beam in place of the 8″ beam and that he was about the premises while the work was going on every other day; that he had frequent talks with him about the different ways of constructing the alterations. In view

of this testimony, we cannot say that the master was not warranted in his finding that Edward Rollberg was about the premises as the agent of his parents, the owners, and that the work in question had been "knowingly permitted" by them. We are of the opinion that the trial court was correct in sustaining that finding.

The appellant further contends that the decree entered by the trial court should be reversed as to both the subcontractors and the general contractors; as to the subcontractors because they cannot be said to have brought suit against the owners within 4 months from the time final payment became due; and, as to the general contractors, bacause they cannot be said to have begun suit against the owners within 2 years after the completion of the contract. The tenant filed this bill for general settlement shortly after the completion of the work in question, making the general contractors and the subcontractors parties defendant. All the subcontractors filed answers thereto, in the nature of intervening petitions, within 4 months after the final payment became due, and they made the owners parties defendant to those intervening petitions. Upon the filing of these intervening petitions, a summons was duly issued and served on the owners at the instance of one of the subcontractors. It was not necessary to get special leave of court to make the owners parties defendant to these intervening petitions. The subcontractors began suit as to the owners within the meaning of section 33 of the Mechanics' Liens Law (J. & A. ¶ 7171) on the date of the filing of their intervening petitions, and that being within 4 months of the time final payment became due, they were within the period of limitation prescribed by this statute. The same is true of the general contractors, for they began suit by filing their intervening petition making the owners parties defendant thereto within 2 years after the contract was completed, as required by sec-

○

tion 7 of the Mechanics' Liens Law (J. & A. ¶ 7145).

The last point urged by the appellant is that no lien was ever created as against the real estate in question, because the title is registered under the Torrens Act, and it is contended that the provisions of that act regarding mechanics' liens were not complied with by either the subcontractors or the general contractors. In meeting this contention by the appellant, the appellees argue that inasmuch as the Mechanics' Liens Act is an enactment of the Legislature passed after the passage of the Torrens Land Registration Act, the terms of the Torrens Act on the question of mechanics' liens, so far as they may be said to be in conflict with the provisions of the Mechanics' Liens Act, must be considered as having been repealed by implication by the enactment of the Mechanics' Liens Act. Repeals by implication are not favored, but the terms of an earlier statute should be construed as continuing in force unless they are clearly inconsistent with and repugnant to those of the later statute, or unless, in the later statute, there is some express notice taken of the former, plainly indicating an intention to repeal it. *Town of Ottawa v. County of La Salle*, 12 Ill. 339; *Holton v. Daly*, 106 Ill. 131. The so-called Torrens Act became effective May 1, 1897, and our present Mechanics' Liens Law went into effect July 1, 1903. There is no express repeal of the provisions of the Torrens Act concerning mechanics' liens in the present Mechanics' Liens Law, and it is therefore our duty to so construe the provisions of the Mechanics' Liens Law, if possible, that its provisions shall not repeal the Torrens Act. *Bruce v. Schuyler*, 9 Ill. (4 Gilm.) 221. The Mechanics' Liens Law is a general law on the subject of mechanics' liens. The Torrens Act is a special act concerning the registration of land titles, and, in case of any conflict as between the general law on mechanics' liens, as contained in the Mechanics' Liens Law, and the special provisions as

to mechanics' liens with regard to property, the title of which is registered under the Torrens Act, under the general rule it would be held that the provisions ⟨ of the special act supersede the general act, although the general act became a law after the special act was passed. *City of Chicago v. Quimby,* 38 Ill. 274; *Card v. McCaleb,* 69 Ill. 314; *McDonough County v. Campbell,* 42 Ill. 490; *Hume v. Gossett,* 43 Ill. 297; *People v. Barr,* 44 Ill. 198; *Gunnarssohn v. City of Sterling,* 92 Ill. 569. And, further, the provisions of the Mechanics' Liens Law, so far as they affect the general contractors and the subcontractors in this case, are substantially re-enactments of similar provisions contained in the Mechanics' Liens Law as it existed prior to and at the time of the enactment of the Torrens Act. Section 7 of the Mechanics' Liens Law defines the rights of the general contractors in this case, and section 33 has to do with the rights of subcontractors. Those sections are substantial re-enactments of sections 7 and 34 of the Mechanics' Liens Law of 1895 (J. & A. ¶¶ 7145, 7172). Illinois Laws 1895, pp. 229, 240. Section 2 of chapter 131, Revised Statutes of Illinois (J. & A. ¶ 11103), provides: ''The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not as a new enactment.'' Therefore the provisions of the Mechanics' Liens Law of 1913, to which we have referred, did not constitute a new enactment but simply a continuation of similar provisions of prior mechanics' liens acts and, as such, cannot be held to repeal by implication those sections of the Torrens Act affecting mechanics' liens claimants so far as those claims have to do with land registered under the provisions of that law. This is true notwithstanding the section of the Mechanics' Liens Law which provides that: ''All acts and parts of acts inconsistent with this act are hereby repealed.'' *Jefferson*

*Theatre Program Co. v. Crejczyk*, 125 Ill. App. 1; *Catlett v. Young*, 143 Ill. 74; *Kelley v. Northern Trust Co.*, 190 Ill. 401; *McGann v. People*, 194 Ill. 526; *Mette v. Feltgen*, 148 Ill. 357; *Patterson v. Scott*, 33 Ill. App. 348; *Elgin City Banking Co. v. Chicago, M. & St. P. Ry. Co.*, 160 Ill. App. 364, 376.

In our opinion, however, there is no conflict between the two acts. The law with reference to mechanics' liens, so far as it has to do with property, the title to which is not registered under the Torrens Act, is contained in the Mechanics' Liens Act. The provisions of the Torrens Act relating to mechanics' liens take property registered under that act out of the general language of the Mechanics' Liens Act, and to that extent constitute an exception to the general provisions of the latter act. In passing the Torrens Act, the general assembly intended that real property, the title to which is registered under the provisions of that act, and all rights in or claims against such property, should be governed by the provisions of that act to the extent to which such provisions are therein contained, and, to that extent, such property and the rights in and claims against it must be considered as differing from all property not registered under the provisions of the Torrens Act.

The question of an apparent contradiction between the provisions of land registration acts and other general acts is a new question in this jurisdiction, but it has arisen under similar conditions in New Zealand and in the State of Washington where land registration laws have been in operation longer than they have in Illinois. Where this question has arisen in those jurisdictions, it has been held that the particular provisions of the land registration act should prevail over those of the general law. *McMullen & Co. v. Croft*, 96 Wash. 275; *Bishop v. Rowe*, 23 N. Zeal. L. 66.

As to this point, therefore, it is our **conclusion that**

inasmuch as the property against which it is sought to enforce the liens in the case at bar is property which has been registered under the Torrens Act, the lien claimants, in order to successfully prosecute their claims for liens, must have complied with the requirements of the Torrens Act as to mechanics' liens. Did they do so?

The sections of the Torrens Act, so far as they affect the issues involved in the case at bar, are as follows:

"Sec. 84 [J. & A. ¶ 2360]. No suit, bill or proceeding at law or in equity for any purpose whatever affecting registered land or any estate or interest therein, or any charge upon the same, shall be deemed to be *lis pendens* or notice to any person dealing with the same, until a certificate of the pendency of such suit, bill or proceeding, under the hand and official seal of the clerk of the court in which it is pending, shall be filed with the registrar and a memorial thereof entered by him upon the register of the last certificate of the title to be affected. This section shall not apply to attachment proceedings when the officer making the levy shall file his certificate of levy as herein provided:

"Sec. 89. [J. & A. ¶ 2365]. In all cases where, by any law in relation to the liens of mechanics or others, any claim or notice is authorized to be filed in any court or office, the same, when it relates to registered land or any interest therein, may be filed in the registrar's office, and being so filed, a memorial thereof shall be entered by the registrar, as in the case of other charges, and proceedings to enforce the lien may be had, as provided in the act creating the same. Until it is so filed and registered, no such lien shall be deemed to have been created.

"Sec. 90. [J. & A. ¶ 2366]. No statutory or other lien shall be deemed to affect the title to registered land until after a memorial thereof is entered upon the register as herein provided."

Referring first to the claims of the subcontractors, the record shows that on April 10, 1914, there was

filed with the Registrar of Titles and by him duly entered in volume 43, p. 155, of Register of Titles, as document #38262, a notice of *lis pendens* as contemplated by the provisions of section 84 of the Torrens Act (J. & A. ¶ 2360). This document was a certificate of the clerk of the Circuit Court of Cook county, certifying to the fact that there was at that time pending and undisposed of in that court, this case at bar, giving its title, and further stating that the cause was a bill of interpleader and that certain defendants, who were named and among whom were included all the subcontractors here involved, had filed answers in the nature of intervening petitions, claiming mechanics' liens upon the premises therein described, giving the legal description of the property in question.

In construing the sections of the Torrens Act hereinbefore set forth, it is our opinion that a subcontractor, having begun his suit within the period fixed by the Mechanics' Liens Act, may bring his claim within the provisions of the Torrens Act by the filing of a notice of *lis pendens,* as described in section 84, and such as the subcontractors did file in this case. That certificate of the pendency of the suit in which the subcontractors were seeking to enforce their mechanics' liens is such a "memorial thereof" as satisfies the language of section 90 of the Torrens Act (J. & A. ¶ 2366), and, when they filed that document, they complied with the requirements of the Torrens Act relating to their mechanic's lien claim, so far as they affect this land, the title to which has been registered under that act. It is claimed by the appellant that, in order to perfect their lien against the property involved in this case, it was not only necessary for the subcontractors to file their certificate of the pendency of their suit with the Registrar of Titles, but that, to be effective, that certificate must have been filed within the period of 4 months prescribed in the

Mechanics' Liens Law for the beginning of suits by subcontractors. We would agree with this contention if the appellant were not the original owner. So far as the interest of the original owner is concerned, the subcontractor must be held to have perfected his lien if he begins suit within 4 months after the time final payment is due him, as prescribed by the Mechanics' Liens Law, and later files with the Registrar of Titles such certificate of the pendency of his suit as is required by the Torrens Act. Where, however, the rights of purchasers or other third parties have intervened, they could not be affected unless the certificate of the pendency of his suit was filed by the subcontractor within the period of 4 months.

As to the lien claimed by the general contractors, the record discloses that on May 18, 1914, there was filed with the Registrar of Titles a certificate of the pendency of this suit in all respects similar to the certificate which had been filed in the interest of the subcontractor and to which we have already referred. It is our opinion that this certificate of the pendency of this suit which was filed in the interest of the general contractors, in which the clerk of the Circuit Court of Cook county certified that there was then pending and undisposed of in that court, this case at bar, giving its title and general number, and further certifying that the bill filed in that cause was in the nature of an interpleader, wherein these general contractors, naming them, were, among others, made parties defendant, and that they had filed their answer to the bill in that cause in the nature of an intervening petition, claiming a mechanic's lien upon the premises involved, giving the legal description of those premises, was such a notice of lien as satisfies the requirements of section 89 (J. & A. ¶ 2365). Construing the words of that section "liberally  *  *  * in order that the true intent and meaning of the Legislature may be fully carried out" (Ill. St. ch. 131, sec. 1, J. & A.

¶ 11102), we are of the opinion that it is not essential that the claim for or notice of lien, filed with the Registrar, shall contain all the elements of the claim for lien which are set forth in section 7 of the Mechanics' Liens Law in connection with those provisions of that section referring to the filing of such claim with the clerk of the Circuit Court, but that it is sufficient, under the terms of section 89 of the Torrens Act, if the general contractors file with the registrar a statement or notice to the effect that they claim a mechanic's lien upon the premises therein described, especially where that statement or notice is further to the effect that a suit is pending to enforce that lien. Such a notice, it seems to us, accomplishes all the purposes which can be said to have been contemplated by the Legislature when they framed the provisions of section 89 of the Torrens Act.

As to this point, therefore, it is our conclusion that the steps taken by both the general contractors and the subcontractors were sufficient to bring their claims for mechanics' liens within the requirements of the Torrens Act.

There being no error in the record, the decree of the Circuit Court is affirmed.

*Affirmed.*